**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:20CR826 |
| | ) | |
| vs. | ) | JUDGE DAN A. POLSTER |
| | ) | |
| GARY NORTON, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT GARY NORTON'S SENTENCING MEMORANDUM

This Sentencing Memorandum for Gary Norton is submitted pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553, and Loc. Crim. R. 32.2(c).

Dated:  May 6, 2021  By: */s/ John R. Mitchell*
John R. Mitchell
john.mitchell@thompsonhine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: 216.566.5500
Fax: 216.566.5800

*Attorney for Defendant Gary Norton*

**I.     INTRODUCTION**

Gary Norton broke the law, and he is prepared to accept the consequences of his actions. The criminal activities in which he was involved were detailed in his plea agreement and the pre-sentence investigation report. Now he faces his sentencing for his actions with the hope that this Court can fashion a humane sentence that enables him to pay his debt to society, but in a manner that enables him to care for his children and continue his "second act" in the business world.

Gary asks the Court to consider not only his criminal acts, but his lack of any meaningful criminal history, current steady employment, and minimal risk of recidivism, and fashion an appropriate sentence for a 49-year old first-time non-violent felon, who, under these circumstances, poses absolutely no risk of reoffending and poses no threat to society. We believe that this Court fashion a sentence that enables him to care for his children and maintain his current employment, and submit hat this would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**II.    THE APPLICABLE LAW**

The bedrock principle that "the punishment should fit the offender and not merely the crime" reflects the undeniable truth that no two people are alike. *Pepper v. United States*, 562 U.S. 476, 487-88 (2011); *see United States v. Ferguson*, 518 Fed. Appx. 458, 466-467 (6th Cir. 2013) ("A foundational principle of sentencing procedure established in 18 U.S.C. § 3553 is that the sentence is to be individualized."). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996), *superseded by* 18 U.S.C. 3742(e) *on other grounds* (appellate standard of review of sentencing) *as stated in U.S. v. Thurston*, 358 F.3d 51, 70 (1st Cir. 2004); *see United States v. Herrera-*

1

*Zuniga,* 571 F.3d 568, 585 (6th Cir. 2009) ("the sentencing court must make an individualized assessment of the appropriate sentence based on the facts presented" and "the unique circumstances of the defendant's case").

The "focal point" of sentencing is 18 U.S.C. § 3553(a). *U.S. v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). Under this statute, the Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a) (emphasis added). The Court must determine the appropriate sentence considering several factors: the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; and the need for the sentence imposed. *Id.*

### III. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Court is very familiar with the facts surrounding these charges by virtue of Gary's plea agreement and PSIR, and those facts need not be repeated in detail here. Still, it is worth examining the reasons behind Gary's actions in order to provide some context for what he did.

This Court may wonder why acted this way, and the answer is very simple—Gary panicked. When approached by the FBI, Gary concedes that he was told not to discuss the FBI's contact with anyone else. But Gary had never been in this situation or any other similar situation before, and, while in this panic, he failed to fully consider the illegal and long-term consequences of disregarding the FBI's instructions. Gary spoke with only one person about being approached by the FBI, with whom he had a long and extensive personal history, desperately trying to make sense of how this contact would affect his life. This is not to minimize Gary's actions. He readily admits that made the wrong decision. But the background above provides context as to why he acted the way he did.

## IV.    GARY'S PERSONAL HISTORY AND CHARACTERISTICS

The presentence investigation report ("PSIR") contains much of the information that this Court needs to sentence Gary. It also identifies Gary's history and characteristics as factors the Court should consider when sentencing him. *PSIR*, at ¶ 69. However, the PSIR does not contain everything that it may need know about Gary in order to fashion the appropriate sentence, and we offer the following further comments for the Court's consideration.

### A.    *Gary And His Family Life.*

Many people claim that their family is the most important thing in their life. But for Gary, his actions speak volumes about his commitment to his children. Gary is divorced, and he shares custody of his children. He has three daughters, ages 14, 13, and 12, and his daughters reside with him three days of the week. Gary attends all of his children's school activities, such as school sports and marching band, and he actively travels and camps with them. He attends church on-line with his children each Sunday.

Gary provides safe place for his children to study and grow, ensuring that their needs are met. Gary and his ex-wife have a good relationship and have a team approach to parenting.

### B.    *Gary's Education And Work History.*

Gary obtained both his undergraduate degree, in 1997, and master's degree in Public Administration, in 1998, from Cleveland State University. As noted in the PSIR, Gary had a previous career in politics. Gary was Mayor of East Cleveland from 2010-2016. *PSIR*, at ¶ 43. He also served as a councilperson from 2004-2009. But that political career is long in Gary's rearview mirror. At the time of this offense, Gary political career had ended and he had moved out of East Cleveland to pursue a career in the private sector.

Changing jobs in your 40s can be a challenge. But through his own hard work, Gary has made a second career for himself in automotive sales. He is currently employed as a car

salesman and earns approximately $60,000 annually. His employer, who is aware of this conviction, is willing to continue to employ Gary if he is able to honor his work obligations.

This is an important consideration. The PSIR details Gary's tight financial condition. *PSIR*, at ¶¶ 44-45. As noted above, Gary's primary hope is to continue to care for his children. There is no guarantee, if he loses this job, that he would be able to find similar employment since he is now a convicted felon and the country is in the midst of a pandemic. The financial effect of losing his job would be catastrophic for Gary and his children.

## V.  THE NEED FOR SENTENCE IMPOSED AND TYPES OF SENTENCES AVAILABLE

A criminal sentence must not be greater than necessary to achieve the goals of sentencing: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from the defendant's further crimes. *See* 18 U.S.C. § 3553(a)(2).

### A.  *To Reflect The Seriousness Of The Offense, Promote Respect For The Law, And Provide Just Punishment.*

Regardless of this Court's sentence, Gary has already been and continues to be punished for his offense. As the result of this investigation and his conviction, Gary has gone from being a highly respected member of this community and his neighborhood to a convicted felon. He will now be unable to exercise certain civil rights, such as the right to vote. Moreover, this case has garnered significant negative publicity for Gary in news articles published in print and online that will forever tar him as a felon. For those who do not know him, he will now be best known for this conviction rather than his successes in life.

The question really becomes "what is just punishment." Every day, former prisoners are released into society to try to rebuild their lives. They are sent to half-way houses, placed on

4

home confinement, or subjected to monitoring. This Court's sentence does not need to teach Gary "a lesson". This lesson was learned long ago at the beginning of this case.

    C.  *To Protect The Public And Deter Future Crime.*

Gary poses absolutely no risk to the public, and the publicity surrounding his case and conviction has already had the desired deterrent effect. He has no significant criminal history, and his conduct here is an aberration in an otherwise law-abiding and exemplary life. *See United States v. Stern*, 590 F. Supp. 2d 945, 951-963 (N.D. Ohio 2008) (imposing below-Guidelines sentence based in part on low risk of recidivism pursuant to § 3553(a) despite finding a downward departure inappropriate under the Guidelines). His sentence should reflect this low risk. *See United States v. Marshall*, 870 F. Supp. 2d 489, 495 (N.D. Ohio 2012) ("An individual with a low risk of recidivism does not need a lengthy incarceration for the protection of the public.").

Gary's age should resolve any doubts about his committing future crimes; he is 49.[1] Studies have shown that recidivism rates decline consistently as age increases, and defendants over the age of 40 display markedly lower rates of recidivism as compared to younger defendants. Only 12.7% of defendants between the ages of 41 to 50 again commit crimes as compared to 35.5% of defendants under 21 and 31.9% of defendants between 21 to 25.

Placing older defendants on community control also drives down recidivism. Between 2005 and 2010, 64.7% of individuals aged 24 or younger placed on community control were arrested and 45.8% went to prison as a result. By contrast, only 23.5% of those aged 50 or older[2] on the date of their release to community control were later arrested and only 14% went to

---

[1] Gary acknowledges that his plea agreement indicates that neither party will recommend or suggest in any way that a departure or variance is appropriate, either regarding the sentencing range or regarding the kind of sentence. He is offering these cases and statistics solely as a consideration in fashioning the appropriate sentence for him in light of his plea agreement.

[2] By the time Gary is released from a potential 10- to 16-month sentence, he will be 50 years old. He is 49 now.

5

prison.[3]  Individuals on community control are less likely to suffer re-arrest and recidivism than those individuals who were incarcerated for the term of their sentence.[4] Even out of those incarcerated, those aged 40 or older are 13.6% less likely to be re-arrested within the first nine years following a conviction than those aged 24 or younger and 8.8% less likely than those aged 25-39.

Further, defendants in Criminal History Category I, like Gary, have an even lower rate of recidivism: 6.9% rate of recidivism for defendants between the ages of 41 to 50.[5]  *See, e.g.*, *United States v. Payton*, 754 F.3d 375, 379 (6th Cir. 2014) ("The Sentencing Commission has observed that '[r]ecidivism rates decline relatively consistently as age increases.'… Both the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing."); *United States v. Weller*, 330 F. App'x 506, 510 (6th Cir. 2009) (upholding downward departure based in part on defendant's age at time of sentencing and resulting lower risk of recidivism); *United States v. Sabino*, 274 F.3d 1053, 1078-1079 (6th Cir. 2001) (upholding downward departure based in part on defendant's age at the time of sentencing); *United States v. Holden*, 2007 U.S. Dist. LEXIS 42722, *7-*8 (E.D. Mich. June 13, 2007) (considering age relevant to defendant's likelihood of recidivism and noting the Sentencing Commission's findings that demonstrate that "people who are employed and those who are over the age of 50 at sentencing are less likely to be recidivists").

---

[3] Statistics retrieved from the U.S. Dept. of Justice's Office of Justice Programs Bureau of Justice Statistics, *Recidivism of Offenders Placed on Federal Community Supervision in 2005: Patterns from 2005 to 2010*, at 6 (June 2016), available at https://www.bjs.gov/content/pub/pdf/ropfcs05p0510.pdf.

[4] "Younger prisoners (those age 24 or younger) were more likely to be arrested than older prisoners (those age 40 or older) during each year following release." U.S. Dept. of Justice's Office of Justice Programs Bureau of Justice Statistics, *2018 Update on Prisoner Recidivism: A 9-Year Follow-up Period (2005-2014)*, at 9 (May 2018), available at https://www.bjs.gov/content/pub/pdf/18upr9yfup0514.pdf.

[5] "Recidivism rates decline relatively consistently as age increases.  Generally, the younger the offender, the more likely the offender recidivates." U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (May 2004), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

Gary is a 49-year old, non-violent, first-time felon that no person could possibly claim to be a threat to society. The citizens of the United States, and Cleveland, Ohio, in particular, will not be "less safe" if Gary receives a humane sentence. This is particularly true because of the facts of this case, because the circumstances leading to Gary's conviction will never reoccur. He is not under any investigation. He will never hold public office again. In short, by virtue of this conviction and his voluntary choice to leave the political arena, this Court should recognize that this will be the only time it ever sees Gary Norton.

### D. *The Court Should Decline To Impose Any Fine.*

As noted in the plea agreement, there is no restitution requirement in this case. *Plea Agreement*, at ¶ 5. Mr. Norton respectfully requests that this Court also decline to impose any fine in accordance with 18 U.S.C. § 3572. Of the eight categories governing the Court's determination of the appropriateness of a fine, only two apply to this situation. The first, the defendant's income, earning capacity, and financial resources mitigate in favor of not fining Gary. 18 U.S.C. § 3572(a)(1). The second factor, the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent upon the defendant, relative to the burden that alternative punishments would impose, also mitigate in favor of not fining Gary. 18 U.S.C. § 3572(a)(2).

As noted in the PSIR, Mr. Norton's monthly income equals his monthly expenses. *PSIR*, at ¶ 44. Simply put, he is living paycheck to paycheck. The Pretrial Services & Probation officer preparing this report noted that Mr. Norton does not possess the ability to pay a fine. *Id.*, at ¶ 45. In light of Gary's tenuous financial circumstances, a fine would directly impact his ability to care for his daughters, who are financially dependent upon him. Any additional burden

7

placed upon him by virtue of a fine, especially in a case where there is no restitution requirement, would cause significant harm to Gary and his family. Accordingly, this Court should decline to fine Gary.

## VI. <u>CONCLUSION</u>

Gary has done everything he can do to accept responsibility and atone for his criminal conduct. He has done so with one over-riding reason: to put himself in the best possible position to continue to care for his children and maintain his employment. It is his hope that this Court will believe that he has paid enough and fashion a sentence that enables him to put this behind him, care for his children, and continue his second career.

Respectfully submitted,

Dated: May 6, 2021

/s/ John R. Mitchell
John R. Mitchell
john.mitchell@thompsonhine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: 216.566.5500
Fax: 216.566.5800

*Attorney for Defendant Gary Norton*

8

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was served through the Court's electronic filing system this 6th day of May 2021, upon the following:

Chelsea S. Rice
Vanessa V. Healy
Assistant United States Attorneys
United States Attorney's Office
801 West Superior Avenue
Cleveland, OH 44113

                                              */s/ John R. Mitchell*
                                              John R. Mitchell